UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CSX TRANSPORTATION, INC.**<br>**500 WATER STREET**<br>**JACKSONVILLE, FL 32202,**<br><br>     **Plaintiff /**<br>     **Counterclaim Defendant,**<br><br>**v.**<br><br>**ZIM INTEGRATED SHIPPING**<br>**SERVICES LTD.**<br>**8 ANDREI SAKHAROV ST.**<br>**P.O. BOX 15067**<br>**HAIFA 3190500, ISRAEL,**<br><br>     **Defendant /**<br>     **Counterclaim Plaintiff /**<br>     **Third-Party Plaintiff,**<br><br>**v.**<br><br>**C&Y GLOBAL INC. and COHERENT**<br>**METAL INC.,**<br><br>     **Third-Party Defendants.** | 25-CV-10411 (VEC) |

**DEFENDANT ZIM INTEGRATED SHIPPING SERVICES LTD.'S**
**ANSWER AND AFFIRMATIVE DEFENSES TO CSX TRANSPORTATION, INC.'S**
**COMPLAINT, COUNTERCLAIM AGAINST CSX, AND THIRD-PARTY COMPLAINT**
**AGAINST C&Y GLOBAL INC. AND COHERENT METAL INC.**

NOW INTO COURT, through undersigned counsel, comes Defendant, ZIM Integrated

Shipping Services Ltd. (hereinafter "ZIM" or "Defendant" or "Third Party Plaintiff"), as and for

its Answer to the Complaint filed by CSX Transportation, Inc. (hereinafter "CSX" or "Plaintiff"),

alleges upon information and belief as follows:

## ANSWER TO CSX'S COMPLAINT

1.      Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 1 of the Complaint.

2.      Admits that ZIM is engaged as a common carrier of merchandise by water for hire, with an office and place of business located at Andrei Sakharov St 9, Haifa, Israel, but except as so admitted, denies the remaining allegations contained in paragraph 2 of the Complaint.

3.      Admits that ZIM American Integrated Shipping, LLC is a New York limited liability company but except as so admitted, denies the remaining allegations contained in paragraph 3 of the Complaint.

4.      Paragraph 4 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 4 for lack of knowledge or sufficient information to justify a belief therein and leaves all questions of law for the Court.

5.      Paragraph 5 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 5 for lack of knowledge or sufficient information to justify a belief therein and leaves all questions of law for the Court.

6.      Paragraph 6 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 6 for lack of knowledge or sufficient information to justify a belief therein and leaves all questions of law for the Court.

7.      Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 7 of the Complaint.

8.      Admits that ZIM is engaged as a common carrier of merchandise by water for hire, but except as so admitted, denies the remaining allegations contained in paragraph 8 of the Complaint.

9.      Admits that ZIM tendered an intermodal shipping container marked ZIMU 104443 to CSX for interstate rail transportation from Bedford Park, IL to the Port of New York and New Jersey, but except as so admitted, denies knowledge and information sufficient to form a belief with respect to the remaining allegations contained in paragraph 9 of the Complaint.

10.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 10 of the Complaint.

11.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 11 of the Complaint.

12.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 12 of the Complaint.

13.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 13 of the Complaint.

14.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 14 of the Complaint.

15.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 15 of the Complaint.

16.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 16 of the Complaint.

17.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 17 of the Complaint.

18.    Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 18 of the Complaint.

19.    Denies the allegations contained in paragraph 19 of the Complaint.

20.    Denies the allegations contained in paragraph 20 of the Complaint.

21.    Admits that CSX sent correspondence to ZIM on or around January 4, 2023 but except as so admitted denies knowledge and information sufficient to form a belief with respect to the remaining allegations contained in paragraph 21 of the Complaint.

22.    Admits that ZIM has not paid CSX's alleged damages because damages—if any exist at all—and liability are in dispute.

## RESPONSE TO COUNT I

23.    Defendant repeats and realleges each response set forth in paragraphs 1-22 of this Answer with the same force and effect as if set forth at length herein.

24.    Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 24 of the Complaint.

25.    Paragraph 25 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 25 for lack of knowledge or sufficient information to justify a belief therein and leaves all questions of law for the Court.

26.    Denies the allegations contained in paragraph 26 of the Complaint.

27.    Paragraph 27 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 27 for lack of knowledge or sufficient information to justify a belief therein and leaves all questions of law for the Court.

28.    Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 28 of the Complaint.

29.    Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 29 of the Complaint.

30.    Paragraph 30 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 30 for lack of knowledge or sufficient information to justify a belief therein and leaves all questions of law for the Court.

31.    Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 31 of the Complaint.

32.    Admits that ZIM has not paid CSX's alleged damages because damages—if any exist at all—and liability are in dispute.

## RESPONSE TO COUNT II

33.    Defendant repeats and realleges each response set forth in paragraphs 1-32 of this Answer with the same force and effect as if set forth at length herein.

34.    Denies the allegations contained in paragraph 34 of the Complaint.

35.    Paragraph 35 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 35 and leaves all questions of law for the Court.

36.    Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 36 of the Complaint.

37.    Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 37 of the Complaint

38.     Paragraph 38 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 38.

39.      Paragraph 39 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 39 and leaves all questions of law for the Court.

40.     Defendant denies any paragraphs or allegations not specifically answered herein and denies any unnumbered or misnumbered Paragraphs in the Complaint, including the Prayer for Relief.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1.     Plaintiff's Complaint fails to state a cause of action upon which relief can be granted as against Defendant.

### SECOND AFFIRMATIVE DEFENSE

2.     Plaintiff failed to give timely notice as to the alleged damage or loss and/or Plaintiff's claims are time barred, in whole or in part, by the applicable statutes of limitation in the applicable legislation, dock receipts, bills of lading, tariffs, charters, contracts of affreightment, service contracts, and/or other agreements.

### THIRD AFFIRMATIVE DEFENSE

3.     Any loss or damage to the shipment/goods as alleged in the Complaint, which is denied, was caused by or contributed to by Plaintiff and/or other third-parties, and not by Defendant.

## FOURTH AFFIRMATIVE DEFENSE

4.      Plaintiff is not the real party in interest or proper plaintiff to assert the claims set forth in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE

5.      Plaintiff has failed to include in its Complaint indispensable parties to the action.

## SIXTH AFFIRMATIVE DEFENSE

6.      Any loss or damage to the shipments/goods as alleged in the Complaint, which is denied, occurred due to a pre-shipment condition or inherent vice of the shipment/goods and/or when the shipment/goods were out of the care, custody and control of defendant(s).

## SEVENTH AFFIRMATIVE DEFENSE

7.      To the extent any fault is found, liability must be apportioned to the shipper and/or other responsible party or parties, and any recovery reduced accordingly.

## SEVENTH AFFIRMATIVE DEFENSE

8.      ZIM issued a bill of lading and or sea waybill in this matter which extends COGSA inland and ZIM is entitled to all COGSA defenses and limitations, including defenses based on shipper fault and mispacking.

## NINTH AFFIRMATIVE DEFENSE

9.      Any claims relating to the inland leg are subject to the defenses, exclusions, and limitations contained in ZIM's bill of lading and/or sea waybill, including Himalaya-type protections and contractual risk allocation.

## TENTH AFFIRMATIVE DEFENSE

10.     Any loss or damage caused by or in connection with the shipments/goods as alleged in the Complaint arose without ZIM's actual fault or privity and without fault or negligence of its

agents or servants or anyone for whom it is responsible, and therefore, ZIM cannot have any liability for such loss or damage.

## ELEVENTH AFFIRMATIVE DEFENSE

11.     Plaintiff's claims are governed by the appliable federal rail liability regime or private rail contract which preempts or limits tort-based recovery against Zim.

## TWELFTH AFFIRMATIVE DEFENSE

12.     Plaintiff has failed to properly and fully mitigate its damages, if any.

## THIRTEENTH AFFIRMATIVE DEFENSE

13.     This is an inconvenient and/or improper forum in which to bring the Complaint.

## FOURTEENTH AFFIRMATIVE DEFENSE

14.     This Court lacks in personam jurisdiction over ZIM.

## FIFTEENTH AFFIRMATIVE DEFENSE

15.     Under the terms of ZIM's bill of lading and/or sea waybill, the shipper is obligated to indemnify and hold harmless Zim for losses arising out of any negligent stuffing or packing of the cargo.

## SIXTEENTH AFFIRMATIVE DEFENSE

16.     ZIM reserves the right to amend this Answer if and once additional information is obtained through discovery, as well as to add additional affirmative defenses.

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.     ZIM reserves all of its rights to file Cross-claims, Counter-claims, and Third-Party Claims in the event its jurisdictional defenses are unsuccessful, or otherwise.

## EIGHTEENTH AFFIRMATIVE DEFENSE

18.    Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, ZIM gives notice of, and reserves its right, to rely on foreign law to the extent applicable.

### NINETEENTH AFFIRMATIVE DEFENSE

19.    ZIM is not liable based upon a superseding and/or intervening action by others.

### TWENTIETH AFFIRMATIVE DEFENSE

20.    To the extent the container's contents, weight, or center of gravity were misdeclared or improperly distributed, such misdeclaration bars or limits recovery against ZIM.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

21.    To the extent Plaintiff seeks purely economic damages absent actionable negligence by ZIM, such claims are barred.

### TWENTY- SECOND AFFIRMATIVE DEFENSE

22.    To the extent applicable, ZIM has the benefit of the terms and conditions of any bill of lading issued with regard to the consignment(s) which are the subject of Plaintiff's Complaint, including but not limited to any and all rights, remedies, defenses, and limitations.

### TWENTY- THIRD AFFIRMATIVE DEFENSE

23.    ZIM avers that the alleged incident and injuries, if any, described in the Complaint arose from the acts or omissions of other parties who loaded, stuffed, and/or secured the cargo in the subject container over whom ZIM exercised no operational control and for whose actions ZIM is not legally responsible.  ZIM, therefore, owed no duty to Plaintiff and cannot be held liable for any such acts or omissions pertaining to the loading, stuffing, and/or securing the cargo in the subject container.

## TWENTY- FOURTH AFFIRMATIVE DEFENSE

24.    Any recovery must be reduced by amounts recoverable from the shipper or other responsible parties, and the ocean carrier is entitled to contribution and/or setoff.

## COUNTERCLAIM AGAINST CSX

1.    This Counterclaim is asserted strictly without prejudice to or waiver of any jurisdictional, venue, contractual, statutory, or other defenses available to ZIM, including but not limited to any forum-selection, arbitration, limitation, or liability-allocation provisions contained in any applicable bill(s) of lading, sea waybill(s), rail contracts, tariffs, service contracts, or other governing agreements, all of which are hereby expressly reserved.

2.    To the extent the derailment described in the Complaint and any resulting loss, damage, expense, or liability alleged by CSX occurred, which is expressly denied, such loss, damage, expense, or liability was caused by and resulted from the acts, omissions, fault, negligence, breach of contract, and/or breach of statutory or regulatory duties of CSX, its agents, servants, contractors, and/or employees, including but not limited to failures relating to rail operations, train handling, inspection, maintenance, speed, routing, and/or rail infrastructure, and occurred without any fault, negligence, or privity on the part of ZIM.

3.    Accordingly, if ZIM is found liable to CSX, or incurs any liability, costs, or expenses by way of judgment or settlement in connection with the derailment, which is denied, ZIM is entitled to indemnity and/or contribution from CSX for all such amounts, including but not limited to attorneys' fees, expert fees, investigation costs, and all other costs and expenses incurred by ZIM in defending against CSX's claims.

**WHEREFORE,** Defendant ZIM prays:

(a)     That the Complaint be dismissed together with costs and expenses incurred in defense of this action;

(b)     That, in the alternative, should ZIM be found liable to Plaintiff in whole or in part, ZIM be awarded judgment over against Plaintiff CSX on its Counterclaim for indemnity and/or contribution in an amount sufficient to fully reimburse ZIM for any judgment, settlement, damages, costs, or expenses incurred, including attorneys' fees and expert fees;

(c)     That ZIM be awarded all costs, including attorney's fees; and

(d)     That ZIM be awarded such other, further, and different relief as may be deemed just, proper, and equitable in the premises.

AND NOW, Third-Party Plaintiff ZIM Integrated Shipping Services Ltd. asserts its third-party complaint ("Third-Party Complaint") against C&Y Global Inc. and Coherent Metal Inc. (hereinafter "Third-Party Defendants"), and alleges as follows:

<u>**THIRD-PARTY COMPLAINT AGAINST**</u>
<u>**C&Y GLOBAL INC. AND COHERENT METAL INC.**</u>

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, as this matter arises out of claims relating to ocean bills of lading concerning the export of cargo from the United States, and is governed by federal statutes and common law related thereto.  Jurisdiction is predicated upon 28 U.S.C. §1333 and §1367.

2.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the value of the amount in controversy exceeds $75,000, exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

3.      Venue is proper in this Court pursuant to the forum-selection clause contained in the ocean bills of lading issued by ZIM and/or 28 U.S.C. § 1391, including because Defendants purposefully directed the subject shipment into, through, and out of this District.

## PARTIES

4.      At all material times, ZIM was and is a business domiciled overseas with an office and principal place of business located at 9 Andrei Sakharov Street, "Matam" – Scientific Industries Center, P.O. B. 1723, Haifa 31016, Israel, and at all times relevant acted as a common carrier of goods by water for hire.

5.      Upon information and belief, C&Y Global Inc. ("C&Y") is a Texas corporation with its principal place of business located in Pasadena, Texas and, among other roles, is engaged in the business of buying, processing and exporting of scrap metal products from the United States.

6.      Upon information and belief, Coherent Metal Inc. ("Coherent") is a Texas corporation with its principal place of business located in Pasadena, Texas and, among other roles, is engaged in the business of buying, processing and exporting of scrap metal products from the United States.

## FACTS

7.      Upon information and belief, C&Y and Coherent are, among other roles, engaged in the business of exporting scrap metal from the United States as well as logistical and other services related thereto.

8.      CSX Transportation, Inc. ("CSX") operates as an interstate rail carrier within the United States.

9.      ZIM acted as a common carrier of goods by water for hire at all times relevant to this Third-Party Complaint.

-12-

10.     In or around July 2021, ZIM issued bill of lading no. ZIMUNYC98151901 (hereinafter the "Bill of Lading") for the carriage of twenty-seven containers, including container no.. ZIMU1044430 (hereinafter, the "Container"), said to contain metal scrap, waste motors, and waste cables (hereinafter the "Cargo").

11.     Under the Bill of Lading, the Cargo was to be transported by rail from Chicago, Illinois to New York, New York and then overseas via the M/V MAERSK SALTORO to Laem Chabang, Thailand.

12.     The Bill of Lading identified the Shipper as Coherent.

13.     The Bill of Lading identified America Metal Industry (Thailand) Co., Ltd. as the Consignee and Notify party.

14.     Upon information and belief, C&Y and/or Coherent booked the subject shipment with ZIM and provided ZIM with, among other things, booking instructions, shipping instructions, and routing information for the Cargo.

15.     Upon information and belief, C&Y and/or Coherent provided ZIM with instructions directing that the Cargo be transported by rail to, and routed through, the Port of New York and New Jersey for onward ocean carriage.

16.     Upon information and belief, C&Y acted on behalf of Coherent with respect to the shipment at issue, including in connection with the booking, routing, and shipment of the Cargo.

17.     Upon information and belief, C&Y booked the shipment with ZIM and instructed that ZIM designate Coherent as the shipper.

18.     Upon information and belief, C&Y and Coherent are trading partners, affiliated companies, integrated in a commercial relationship, joint venturers, and/or alter egos of one

another, in regard to their role in the scrap metal trade, including the exporting of scrap metal products from the United States.

19.    Upon information and belief, Coherent is a trading alias of, related affiliate of, alternate business name for, and/or agent of C&Y.

20.    Upon information and belief, Coherent and/or C&Y was/were the owner(s) of the Cargo at all relevant times, and/or acted on behalf or in furtherance of any owner/seller or sales contract to the extent the Cargo was sold prior to export from the United States.

21.    Under the Bill of Lading and otherwise, Coherent and C&Y, jointly and severally, owed a duty to ZIM to safely, securely, and properly load, stuff, block, brace, secure, and evenly distribute the Cargo and its weight within the twenty-seven containers covered by the Bill of Lading, including the Container.

22.    On or before July 20, 2021, the Container was stuffed (loaded) and sealed by Coherent and C&Y and/or those acting on their behalf at origin, without the participation, knowledge, direction, supervision, or inspection of ZIM.

23.    On or before July 20, 2021, the remaining containers transported under the Bill of Lading were stuffed (loaded) and sealed by Coherent and C&Y and/or those acting on their behalf at origin, without the participation, knowledge, direction, supervision, or inspection of ZIM.

24.    In the event ZIM is found liable to CSX, which is denied, Coherent and C&Y, jointly and severally, (i) failed to properly block and brace the Cargo within the Container, (ii) failed to adequately secure the Cargo within the Container, (iii) failed to use appropriate dunnage, restraints, or load-securing devices suitable for intermodal rail and ocean transportation, and/or (iv) failed to evenly and safely distribute the Cargo and weight of the Cargo within the Container,

resulting in excessive and unbalanced concentration of weight and an elevated and unstable center of gravity.

25.     In the event ZIM is found liable to CSX, which is denied, Coherent and C&Y, jointly and severally, failed to load the Container in accordance with applicable laws, rules, regulations, and industry-accepted container-stuffing and cargo-securing standards, and failed to ensure that the Container was fit for rail and ocean carriage.

26.     In the event ZIM is found liable to CSX, which is denied, such liability resulted from and was caused by the acts, omissions, fault, negligence, breach of contract (express or implied), and/or breach of warranty (express or implied) of Coherent and C&Y, jointly and severally.

27.     As reflected in the Bill of Lading, Coherent and/or C&Y or those acting on their behalf affixed the Container with seal no. 1469643 prior to the time it was tendered to CSX for rail transport.

28.     On or about July 20, 2021, Coherent and/or C&Y or those acting on their behalf tendered the Container to CSX in Chicago, Illinois for rail transport to the Port of New York and New Jersey.

29.     On or about July 21, 2021, the train operated by CSX, which was transporting the Container, derailed as it was traveling eastbound on CSX's main line near Auburn, Indiana (the "Derailment").

30.     Without admitting any liability, as a direct and proximate result of Coherent and C&Y's failure to properly stuff (load), block, brace, secure, and distribute the Cargo and its weight inside the Container, the Cargo shifted during the rail segment of transportation, causing the Derailment and resulting damages to CSX, including damage to rail equipment, infrastructure,

cargo, and other property, and causing ZIM to sustain damages, including damage to cargo and containers and the incurrence of costs and expenses such as surveys, inspections, expert fees and attorneys' fees.

31.    On or about July 27, 2021, ZIM tendered defense and indemnity to C&Y and Coherent, seeking full recovery and indemnity from C&Y and Coherent for any and all liabilities it may incur in connection with the Derailment, including any and all amounts it may be required to pay by virtue of judgment, settlement, or otherwise in connection with CSX's claims.

32.    On or about January 4, 2023, Cohen & Palombo P.C., acting on behalf of CSX, presented a demand to ZIM in the amount of $2,581,083.17 for alleged damages arising from the Derailment.

33.    On or about July 19, 2023, C&Y and Coherent entered into a tolling agreement with Zim American Integrated Shipping Services Co. LLC ("Zim American"), acting on behalf of itself and ZIM, which extended the time for filing any and all claims arising out of the Derailment until July 14, 2024.

34.    On or about July 12, 2024, C&Y and Coherent and Zim American, acting on behalf of itself and ZIM, extended the tolling agreement until July 14, 2025.

35.    On or about July 13, 2024, C&Y and Coherent and Zim American, acting on behalf of itself and ZIM, extended the tolling agreement until January 21, 2026.

36.    On or about December 22, 2025, CSX filed its Complaint (R. Doc. 1) against ZIM for damages arising from the Derailment.

37.    Despite repeated tenders and demands by ZIM and its counsel, C&Y and Coherent have failed or refused to accept ZIM's tender or to take other appropriate action to resolve the claims asserted herein and in CSX's Complaint.

## FIRST CAUSE OF ACTION

**BREACH OF CONTRACT AND BREACH OF WARRANTY**

38.     ZIM repeats and re-alleges each and every paragraph above as if fully set forth herein.

39.     ZIM asserts these claims without prejudice to or waiver of any defenses that may be available to it against anyone claiming an interest in the Cargo.

40.     Without admitting any liability and solely in the alternative, ZIM alleges as follows:

41.     At all relevant times, C&Y and Coherent qualified as "Merchants" under the Bill of Lading, and ZIM qualified as the "Carrier."

42.     Pursuant to the Bill of Lading, C&Y and Coherent owed contractual duties and made express and implied warranties to properly load, stuff, stow, block, brace, secure, and properly distribute the Cargo and its weight inside the Container so that it was safe and fit for intermodal transportation by rail and ocean vessel.

43.     C&Y and Coherent breached their contractual obligations and/or warranties by, among other things:

(i)     failing to properly stuff (load), block, brace, secure, and properly distribute the Cargo and its weight inside the Container;

(ii)    failing to ensure that the Cargo was fit for all intended modes of transportation, handling, storage, and carriage;

(iii)   failing to ship the Cargo in compliance with applicable laws, regulations, and directives;

(iv)    failing to ensure that the Cargo would not cause loss, damage, injury, liability, or expense to ZIM or to any other entity, person or property;

-17-

(v)      failing to stuff and secure the Cargo in a safe and adequate manner having regard to the requirements of containerized intermodal transport and the reasonably anticipated conditions of rail and ocean carriage;

(vi)      failing to warrant and/or misrepresenting the accuracy and correctness of the Cargo's contents, weight, distribution, packing method, and suitability for rail and ocean transport.

44.      The foregoing breaches of contract and warranties, express or implied, caused and/or contributed to the Derailment and the resulting damages to CSX, including damage to rail equipment, infrastructure, cargo, and other property, and causing ZIM to sustain damages, including damage to cargo and containers and the incurrence of costs and expenses such as surveys, inspections, expert fees and attorneys' fees.

45.      If ZIM is held liable to CSX or resolves CSX's claims by settlement, such liability will be solely the result of C&Y and Coherent's breaches of the Bill of Lading and related contractual obligations and breaches of warranties, express and implied.

46.      As a result of the foregoing, ZIM is entitled to indemnity from and/or contribution by C&Y and Coherent, on a joint and several basis, for any and all sums ZIM may be required to pay in connection with the Cargo and/or CSX's claims, whether by judgment or settlement, as well as recovery for all damages sustained directly by Zim as alleged herein, inclusive of attorneys' fees.

## SECOND CAUSE OF ACTION

## CONTRACTUAL INDEMNITY

47.      ZIM repeats and re-alleges each and every paragraph above as if fully set forth herein.

48.     Without admitting any liability and solely in the alternative, ZIM alleges as follows:

49.     The Bill of Lading contains express indemnity provisions pursuant to which the Merchant agrees to defend, indemnify, and hold harmless the Carrier from and against any and all claims, losses, damages, liabilities, costs, and expenses arising out of or resulting from the packing, stuffing, loading, securing, declaration, or condition of the Cargo.

50.     CSX's claims against ZIM arise directly out of C&Y and Coherent's improper loading, stuffing, securing, and weight distribution of the Cargo, and therefore fall squarely within the scope of the Merchant's contractual indemnity obligations under the Bill of Lading.

51.     Despite repeated tenders, C&Y and Coherent have failed and refused to honor their contractual obligations to defend and indemnify ZIM in connection with CSX's claims.

52.     As a result of C&Y and Coherent's breach of their contractual indemnity obligations, ZIM has incurred and will continue to incur damages, including defense costs, attorneys' fees, settlement exposure, and potential liability to CSX.

53.     ZIM is entitled to full contractual indemnity from C&Y and Coherent for any judgment, settlement, costs, expenses, or attorneys' fees incurred in connection with the Derailment and the claims asserted by CSX to the extent ZIM is found liable, which is denied.

54.     ZIM is entitled to full contractual indemnity from C&Y and Coherent for damages sustained by Zim, including damage to cargo and containers and the incurrence of costs and expenses such as surveys, inspections, expert fees and attorneys' fees.

### THIRD CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

55.     ZIM repeats and re-alleges each and every paragraph above as if fully set forth herein.

56.    ZIM asserts these claims without prejudice to or waiver of any defenses that may be available to it against anyone claiming an interest in the Cargo.

57.    Without admitting any liability and solely in the alternative, ZIM alleges as follows:

58.    In tendering the Container to CSX and ZIM for intermodal transportation, including by rail and ocean vessel, Coherent and C&Y represented, expressly and/or by implication, that the Cargo had been properly loaded, stuffed, blocked, braced, secured, and evenly distributed within the Container, and that the Container and its contents were fit and safe for rail and ocean carriage.

59.    These representations included, inter alia, representations concerning the weight, weight distribution, and stability of the Cargo within the Container, and that the Container complied with applicable laws, regulations, and industry standards governing intermodal transportation.

60.    Coherent and C&Y knew or should have known that these representations were false or misleading because the Cargo was improperly loaded and unevenly distributed, creating an unsafe condition that rendered the Container unfit for rail and ocean transportation.

61.    ZIM reasonably relied on Coherent and C&Y's representations in accepting the Container for carriage and arranging for its transportation by rail and ocean vessel, without independent opportunity to inspect the interior condition of the sealed Container.

62.    As a direct and proximate result of Coherent and C&Y's negligent misrepresentations, ZIM has incurred and continues to incur damages, including exposure to claims asserted by CSX, damage to cargo and containers, and the incurrence of attorneys' fees, expert costs, survey expenses, and other losses.

## **FOURTH CAUSE OF ACTION**

## **NEGLIGENCE, GROSS NEGLIGENCE & TORT CONTRIBUTION AND INDEMNITY**

63.    ZIM repeats and re-alleges each and every paragraph above as if fully set forth herein.

64.    ZIM asserts these claims without prejudice to or waiver of any defenses that may be available to it against anyone claiming an interest in the Cargo.

65.    Without admitting any liability and solely in the alternative, ZIM alleges as follows:

66.    As shippers of containerized cargo tendered for intermodal transportation by rail and ocean vessel, C&Y and Coherent owed a duty to exercise reasonable care in the loading, stuffing, blocking, bracing, securing, and weight distribution of the Cargo inside the Container so as to ensure that the Container was safe and fit for rail and ocean carriage.

67.    C&Y and Coherent breached their duties by, inter alia, negligently and improperly loading and stuffing the Container, including by failing to adequately block and brace the Cargo, failing to use appropriate dunnage or load-securing devices, and failing to secure the Cargo against foreseeable movement during rail and ocean transportation.

68.    C&Y and Coherent further breached their duties by unevenly and unsafely distributing the Cargo within the Container, resulting in an excessive and unbalanced concentration of weight and an elevated and unstable center of gravity during normal rail, terminal, and containership operations.

69.    C&Y and Coherent failed to load the Container in accordance with applicable laws, regulations, industry standards, and accepted intermodal container-stuffing and cargo-securing practices, and failed to ensure that the Container was fit and safe for rail and ocean carriage.

70.    Upon information and belief, C&Y and Coherent acted with gross negligence and reckless indifference to the safety of persons and property by loading and tendering the Container for intermodal transportation, including rail and ocean transportation, despite knowing, or

consciously disregarding, that the Cargo and its weight was improperly secured and unevenly distributed, and that such conditions posed a substantial and foreseeable risk to people, property, and the environment due to cargo shift, instability, and derailment during rail and ocean transport.

71.    C&Y and Coherent's conduct demonstrated a willful and wanton disregard for established container-stuffing standards and intermodal safety requirements, including the foreseeable consequences of excessive weight concentration and inadequate load restraint in a sealed container to be transported by rail and ocean vessel.

72.    As a direct and proximate result of C&Y and Coherent's negligent, grossly negligent, and reckless conduct, the Cargo shifted during the rail segment of transportation, which caused and resulted in the Derailment.

73.    As a result of the foregoing, ZIM has incurred and continues to incur damages, including damage to cargo and containers and the incurrence of costs and expenses such as surveys, inspections, expert fees and attorneys' fees.

74.    To the extent ZIM is found liable to CSX, in whole or in part, such liability would be purely vicarious and derivative of C&Y and Coherent's negligence, gross negligence, and reckless conduct, entitling ZIM to full indemnity and/or contribution for any judgment, settlement, costs, or expenses incurred, as well as recovery for its direct damages as alleged herein, inclusive of attorneys' fees.

**PRAYER FOR RELIEF**

**WHEREFORE,** ZIM Integrated Shipping Services Ltd prays that the Court enter judgment on its Third-Party Complaint against C&Y Global Inc. and Coherent Metal Inc. on the counts above, together with an award of costs, costs of suit, interest, and reasonable attorneys'

fees, and for such other relief as the Court deems just and proper.

DATED: New York, New York January 21, 2026

LISKOW & LEWIS
*Attorneys for Defendant*
*Zim Integrated Shipping Services Ltd.*

By:    /s/  *William H. Yost*

Michael Fernandez
William H. Yost
11 Broadway, Suite 615
New York, NY 10004
Tel.: (332) 286-5283
whyost@liskow.com

**TO: VIA ECF**

Cohen & Frey P.C.
Jeffrey D. Cohen
Timothy L. Frey
The Times Building'
32 Parking Plaza, Suite 402
Ardmore, PA 19003
jcohen@freightlaw.net
tfrey@freightlaw.net

Murtagh, Cossu, Venditti & Castro-Blanco, LLP
John M. Murtagh
222 Bloomingdale Road
White Plains, NY 10605
jmurtagh@mcvclaw.com

*Attorneys for Plaintiff*
*CSX Transportation, Inc.*